```
 1 | RANDY S. GROSSMAN
   | United States Attorney
 2 | MIKAELA L. WEBER
   | STEPHEN H. WONG
 3 | Assistant U.S. Attorneys
   | California Bar Nos.: 279391/212485
 4 | United States Attorney's Office
   | 880 Front Street, Room 6293
 5 | San Diego, California 92101-8893
   | Telephone: (619) 546-9734/9464
 6 |
   | Attorneys for Plaintiff
 7 | UNITED STATES OF AMERICA
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 22-CR-0214-LL |
|---|---|
| Plaintiff, | **PLEA AGREEMENT** |
| v. | |
| JAIMEE ASHLEY KORYN (1), | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, and Mikaela L. Weber and Stephen H. Wong, Assistant United States Attorneys, and defendant, Jaimee Ashley Koryn, with the advice and consent of Meghan Annette Blanco, counsel for defendant, as follows:

//
//
//
//
//

Def. Initials *JK*

I

**THE PLEA**

A. THE CHARGE

Defendant agrees to plead guilty to a four-count Information charging as follows:

Count 1

On or about July 2, 2021, within the Southern District of California, defendants, JAIMEE ASHLEY KORYN and JONATHAN MIGUEL LOPEZ, did knowingly and intentionally possess with the intent to distribute 40 grams and more, to wit: approximately 52.89 grams (0.11 pounds), of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

Count 2

On or about July 2, 2021, within the Southern District of California, defendants, JAIMEE ASHLEY KORYN and JONATHAN MIGUEL LOPEZ, did knowingly and intentionally possess with the intent to distribute 5 grams and more, to wit: approximately 21.24 grams (0.04 pounds) of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

Count 3

On or about October 8, 2021, within the Southern District of California, defendants, JAIMEE ASHLEY KORYN and JONATHAN MIGUEL LOPEZ, did knowingly and intentionally possess with the intent to distribute 40 grams and more, to wit: approximately 357.6 grams (1.00 pounds), of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

Count 4

Between on or about July 2, 2021 and October 8, 2021, within the Southern District of California, defendants, JAIMEE ASHLEY KORYN and JONATHAN MIGUEL LOPEZ, did

knowingly and intentionally conspire with other persons known and unknown, to distribute, 400 grams and more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(b)(1)(B) and 846, a felony.

B. DISMISSAL OF INDICTMENT

In exchange for entering a plea pursuant to this agreement, the United States agrees to (1) move to dismiss the charges in the Indictment against Defendant without prejudice when Defendant is sentenced, and (2) not prosecute Defendant thereafter on such dismissed charges. The only exceptions are if Defendant breaches the terms of this plea agreement or if Defendant's guilty plea is set aside for any reason. If Defendant breaches this agreement or her guilty plea is set aside, section XII below shall apply.

C. PRESERVATION OF EVIDENCE

Defendant agrees further that, following entry of defendant's guilty plea, the Government need not hold or preserve any evidence seized in connection with this case. With respect to any controlled substance seized in connection with this case, defendant agrees that, following entry of defendant's guilty plea, the Government need not preserve, and may destroy, the controlled substance thirty (30) days after the Government has provided defendant with the laboratory analysis report. If defendant believes that additional testing is needed, defendant will arrange for, and complete, such testing within the above-referenced thirty (30) day period, unless that period is extended by joint written agreement between the parties or by order of the Court, in which case the Government shall preserve the controlled substance for the agreed-upon or judicially mandated period. Furthermore, if the court has issued a preservation order in connection with any seized evidence, the

defendant agrees to jointly request that the Court lift or revoke the preservation order following entry of defendant's guilty plea.

D. RESTITUTION

The defendant agrees to restitution for expenses related to any funeral and/or burial for S.G. in an amount to be determined at sentencing.

E. FORFEITURE

The Defendant further agrees to the administrative and/or civil forfeiture of all properties seized in connection with this case which the Defendant agrees are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881. The Defendant further waives Defendant's right to receive timely notice of administrative forfeiture as set forth in 18 U.S.C. § 983(a) and waives receipt of all notice of forfeiture in this and all other administrative and civil proceedings. Defendant waives and disclaims defendant's interest, if any, in the properties to be forfeited as described above. Defendant further agrees not to contest or to assist any other person or entity in contesting the forfeiture of the property(ies) seized in connection with this case.

II

**NATURE OF THE OFFENSE**

A. ELEMENTS EXPLAINED

The offenses to which defendant is pleading guilty have the following elements:

Counts 1 & 3 – Possession with Intent to Distribute Fentanyl

1. Defendant knowingly possessed with the intent to distribute fentanyl, a Schedule I Controlled Substance; and

2. Defendant knew that the substance was fentanyl or some other federally controlled substance.

Def. Initials ⟨signature⟩
Case No. 22-CR-0214-LL

In addition, for purposes of sentencing, the Government would have to prove, beyond a reasonable doubt, that the amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) involved in the offense was at least 40 grams of fentanyl.

### Count 2 – Possession with Intent to Distribute Methamphetamine

1. Defendant knowingly possessed with the intent to distribute methamphetamine, a Schedule II Controlled Substance; and

2. Defendant knew that the substance was methamphetamine or some other federally controlled substance.

In addition, for purposes of sentencing, the Government would have to prove, beyond a reasonable doubt, that the amount of methamphetamine involved in the offense was at least 5 grams of methamphetamine (actual).

### Count 4 – Conspiracy to Distribute Fentanyl

1. There was an agreement between two or more persons to commit the crime of distributing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl) or some other federally controlled substance; and

2. Defendant became a member of the conspiracy knowing of its object to distribute fentanyl or some other federally controlled substance and intending to help accomplish that object.

In addition, for purposes of sentencing, the Government would have to prove, beyond a reasonable doubt, that the amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) involved in the offense was at least 400 grams of fentanyl.

B. **ELEMENTS UNDERSTOOD AND ADMITTED – FACTUAL BASIS**

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

## Counts 1 & 2

1. On or about July 2, 2021, Oceanside Police Department (OPD) Officers approached defendant, Jaime Ashley Koryn and, and co-defendant, Jonathan LOPEZ, as they were both exiting a vehicle in a parking lot at a Motel 6 in Oceanside, California. OPD Officers searched the vehicle after obtaining consent.

2. Upon searching the vehicle, OPD Officers found the following inside a black purse: a baggie, a plastic container, and a hair tie with a secret compartment, all which contained a powdery substance. The white powdery substances tested positive for the characteristics of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) and weighed a total of 52.89 grams. OPD Officers also found four baggies in a satchel in the passenger seat of the vehicle, all of which contained a crystalline substance. The crystalline substances tested positive for the characteristics of methamphetamine and weighed a total of 21.24 grams.

3. At the time the OPD Officers discovered the fentanyl and methamphetamine, Defendant and co-defendant LOPEZ knowingly possessed the 52.89 grams of fentanyl and 21.24 grams of methamphetamine and intended that she (Defendant) or co-defendant LOPEZ would distribute that fentanyl to others.

4. The parties agree that 52.89 grams of fentanyl is a distributable amount of fentanyl and is not consistent with personal use. Similarly, the parties agree that 21.24 grams of methamphetamine is a distributable amount of methamphetamine and is not consistent with personal use.

## Counts 3 & 4

5. From approximately July 2, 2021, up to and including October 8, 2021, Defendant agreed with co-defendant LOPEZ and others to distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) or some other federally controlled substance.

6. In furtherance of the conspiracy, on or about June 19, 2021, co-defendant exchanged messages with a person named "D.G" regarding the ongoing sale of fentanyl. D.G. complained to LOPEZ that his price, $300 for four grams of fentanyl, was too high. In response, LOPEZ said that he had discussed the sale with Defendant ("I asked Jay [Defendant] and she said she doesn't give you guys that much like 5 or 6 grams") and that he was confident that the price and quality he was selling was a good deal: "I'm not gonna be kissing ass or anything cuz at 60 something [$60 dollars] a grm of fetti [per gram of fentanyl] its fkn cheap."

7. In furtherance of the conspiracy (Count 4), on or about July 2, 2021, July 28, 2021, and October 8, 2021, and on various occasions between those dates, Defendant and co-defendant LOPEZ possessed fentanyl for distribution to other persons.

   a. On or about July 2, 2021, Defendant knowingly and intentionally possessed with the intent to distribute approximately 52.89 grams of fentanyl along with co-defendant KORYN.

   b. On or about July 28, 2021, Defendant knowingly and intentionally possessed with the intent to distribute 21 pills (comprising approximately 74.2 grams) of fentanyl.

   c. On October 8, 2021, at the residence Defendant shared with co-defendant LOPEZ, Defendant possessed approximately 155 blue circular pills, imprinted with "M" on one side and "30" on the other, on the countertop inside the master bathroom. The blue pills weighed approximately 104.5 grams and tested positive for fentanyl. Defendant also possessed a white powdery substance inside of an orange plastic bag stuffed inside a clear plastic container on the countertop inside the master bathroom. The white powdery substance weighed approximately 253.1 grams and tested positive for the characteristics of fentanyl.[1]

8. On October 8, 2021, underneath the mattress in the master bedroom of the residence she shared with co-defendant LOPEZ, Defendant and LOPEZ kept a .32 caliber semiautomatic pistol with serial number 823932, which was loaded with 2 rounds of .32 caliber ammunition. Defendant and LOPEZ kept that pistol under their mattress to protect the drugs and drug proceeds stored at the residence, among other reasons.[2]

9. In furtherance of the conspiracy, in or around September 2021, Defendant, with co-defendant LOPEZ's knowledge and consent, represented to other persons who were purchasing fentanyl from Defendant that the fentanyl belonged to LOPEZ. Defendant made that representation for the purpose of charging a higher price to such persons.

10. In furtherance of the conspiracy, on or about September 29, 2021, Defendant used her cellular telephone to arrange the

---

[1] A minor residing in the residence also tested positive for fentanyl. The circumstances under which the minor ingested fentanyl, and any potential effect of those circumstances on the Sentencing Guidelines calculation, are still under investigation. The parties reserve the right to argue for, or against, any applicable enhancement that results from this investigation at sentencing.

[2] Defendant acknowledges that she possessed a "dangerous weapon" in connection with this offense pursuant to USSG § 2D1.1(b)(1) rendering him eligible for a two-level enhancement of the base offense level and rendering him ineligible for safety valve pursuant to USSG § 5C1.2(A)(2).

      delivery of three counterfeit oxycodone pills laced with fentanyl to S.G. S.G. texted Defendant asking, "Hey can I pick up 2 blues [counterfeit oxycodone pills containing fentanyl] please." Defendant replied, "My bf [boyfriend, a reference to LOPEZ] has some [counterfeit oxycodone pills containing fentanyl] how many u need." Defendant and S.G. agreed that S.G. would purchase three pills. That evening, Defendant met with S.G. outside of the residence that Defendant shared with LOPEZ, and delivered to S.G. three counterfeit oxycodone pills laced with fentanyl in exchange for money. Those three pills came from a larger set of collection of pills that Defendant and LOPEZ stored in their shared residence, and were pills which they jointly possessed.

11. On or about September 30, 2021, S.G. fatally overdosed after consuming one of the pills that Defendant provided to S.G. on or around September 29, 2021.

    a. A toxicology report from the San Diego Medical Examiner confirmed that S.G. died of "the toxic effects of fentanyl, cocaine, and alprazolam." The parties stipulate and agree that the counterfeit oxycodone pill laced with fentanyl, provided by Defendant, was the "but for" cause of S.G.'s death.

    b. As a result of S.G.'s use of the fentanyl supplied by Defendant, S.G. overdosed and died. Defendant agrees and stipulates, that S.G.'s death was caused by the fentanyl that KORYN provided to S.G. on or around September 29, 2021, pursuant to U.S.S.G. § 1B1.2.

12. In furtherance of the conspiracy, on or about October 8, 2021, Defendant, along with co-defendant LOPEZ, knowingly and intentionally possessed the 357 grams of fentanyl found in the residence (i.e. the pills and powder combined) that she shared with LOPEZ, and along with LOPEZ Defendant intended to distribute that fentanyl to others.

13. Between July 2, 2021, and October 8, 2021, Defendant and co-defendant LOPEZ jointly distributed more than 400 grams of fentanyl.

14. Defendant became a member of the conspiracy knowing that its object was to distribute fentanyl or some other federally controlled substance. Defendant also knew that the amount of fentanyl involved in the conspiracy was at least 400 grams.

15. The parties stipulate and agree that the above factual basis for Count 4 specifically establishes the commission of the offense of conspiracy to distribute fentanyl resulting in death and/or serious bodily injury. The parties further stipulate and agree that the Sentencing Guidelines for distribution of a controlled substance resulting in death or serious bodily injury [U.S.S.G. § 2D1.1(a)(2)] should apply as set forth in Section X of this Agreement. The parties further stipulate that defendant is not eligible for safety

8

Def. Initials _____
Case No. 22-CR-0214-LL

valve under U.S.S.G. § 5C1.2(a)(3) because this offense resulted in death or serious bodily injury to a person.

## III

## PENALTIES

The crimes to which defendant is pleading guilty carries the following penalties:

### Counts 1-3

A. A maximum of 40 years in prison; and a mandatory minimum sentence of 5 years;

B. A maximum $5,000,000 fine;

C. a mandatory special assessment of $100.00 per count;

D. A term of supervised release of at least 5 years and up to life. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release;

E. Possible ineligibility for certain Federal benefits; and

### Count 4

A. A maximum of life in prison; a mandatory minimum sentence of 10 years;

B. A maximum $10,000,000 fine;

C. a mandatory special assessment of $100.00;

D. A term of supervised release of at least 5 years and up to life. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release;

E. Possible ineligibility for certain Federal benefits; and

F. The Court has discretion to enter an order of restitution to the victims of the offense.

//
//

## IV

## DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages of trial;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of defendant; and

F. Not testify or have any adverse inferences drawn from the failure to testify.

## V

## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty, defendant will not be provided this information, if any, and defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or file a collateral attack on the existence of this information.

//
//
//

## VI

## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea;

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the court;

C. No one has threatened Defendant or Defendant's family to induce this guilty plea; and,

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge

11

Def. Initials
Case No. 22-CR-0214-LL

must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. **Defendant agrees to request that a presentence report be prepared**. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation as to what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is **not binding on the Court**. Any recommendation made by the Government at sentencing is also not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

//

//

Def. Initials
Case No. 22-CR-0214-LL

X

**PARTIES' SENTENCING RECOMMENDATIONS**

A. SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1. Base Offense Level [U.S.S.G. § 2D1.1]                               38*
2. Safety Valve [U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2]                   n/a[3]
3. Acceptance of Responsibility [§ 3E1.1]                              -3

\* If defendant is determined to be a career offender pursuant to USSG § 4B1.1(a), the applicable base offense level shall be determined pursuant to USSG § 4B1.1(b). Furthermore, the defendant will be ineligible for any role reduction.

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer; or

---

[3] Defendant acknowledges that she is not eligible for safety valve because this offense resulted in death or serious bodily injury to a person. U.S.S.G. § 5C1.2(a)(3). In addition, Defendant agrees that she is also ineligible for safety valve because of the presence of one or more firearms in connection with the offense, pursuant to USSG § 2D1.1(b)(1).

13                                   Def. Initials _____
                                     Case No. 22-CR-0214-LL

    4.    Breaches this plea agreement in any way.

C.    <u>FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553</u>

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553, **but may not request an adjustment for mitigating role**. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above. Defendant acknowledges that she is subject to a mandatory-minimum sentence of 120 months and cannot not seek a sentence below 120 months.

D.    <u>NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY</u>

The parties have **no** agreement as to Defendant's Criminal History Category, except that, if Defendant is determined to be a Career Offender, the parties agree that the Defendant is automatically a Criminal History Category VI pursuant to USSG § 4B1.1(b).

E.    <u>"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION</u>

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F.    <u>PARTIES' RECOMMENDATIONS REGARDING CUSTODY</u>

The Government will recommend that Defendant be sentenced to 180 months' custody. Defendant will recommend a sentence no lower than 120 months' custody.

G.    <u>SPECIAL ASSESSMENT</u>

The parties will jointly recommend that defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. The special assessment shall be paid through the office of the Clerk of the District Court by bank

Def. Initials ⎯⎯⎯
Case No. 22-CR-0214-LL

or cashier's check or money order made payable to the "Clerk, United States District Court."

H. <u>SUPERVISED RELEASE</u>

The Government is free to recommend a period of supervised release. If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least two-thirds of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment.

XI

<u>DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK</u>

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is defendant may collaterally attack the conviction or sentence on the basis that defendant received ineffective assistance of counsel.

XII

<u>BREACH OF THE PLEA AGREEMENT</u>

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Def. Initials ___
Case No. 22-CR-0214-LL

Defendant breaches this agreement if defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

A. Failing to plead guilty pursuant to this agreement;
B. Failing to fully accept responsibility as established in Section X, paragraph B, above;
C. Failing to appear in court;
D. Attempting to withdraw the plea;
E. Failing to abide by any court order related to this case;
F. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or
G. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual

basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any prosecution of, or any action against, defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//

//

//

Def. Initials
Case No. 22-CR-0214-LL

## XV

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is defendant's independent opinion, and defendant's counsel did not advise defendant about what to say in this regard.

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

10/3/22
DATED

*Stephen H. Wong*
MIKAELA L. WEBER
STEPHEN H. WONG
Assistant United States Attorneys

9-27-22
DATED

MEGHAN ANNETTE BLANCO
Defense Counsel

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE.

9/27/2022
DATED

JAIMEE ASHLEY KORYN
Defendant

Approved by:

s/A. Dale Blankenship
Assistant United States Attorney